COURT OF APPEALS OF VIRGINIA

**UNPUBLISHED**

Present: Judges Causey, Raphael and Senior Judge Clements
Argued at Richmond, Virginia


KAREN S. TAYLOR, ET AL.

                              MEMORANDUM OPINION[*] BY
v.       Record No. 1905-23-2       JUDGE JEAN HARRISON CLEMENTS
                                  OCTOBER 7, 2025

BOARD OF SUPERVISORS OF
  GREENE COUNTY, VIRGINIA, ET AL.


FROM THE CIRCUIT COURT OF GREENE COUNTY
David M. Barredo, Judge

John S. Koehler (The Law Office of James Steele, PLLC, on briefs),
for appellants.

Kelley Kemp (Deal & Lacheney P.C., on brief), for appellee Board
of Supervisors of Greene County.

Maynard L. Sipe (Boyd & Sipe PLC, on briefs), for appellees
Sojourner Shenandoah, LLC, and Crimson Rock Capital, LLC.


Neighbors Karen S. Taylor; Dewey L. Taylor, Jr., Trustee of the Dewey L. Taylor, Jr.

Revocable Trust dated November 5, 2012; Joyce M. Taylor, Trustee of the Joyce M. Taylor Trust

dated November 5, 2012; Jo Ann Woods; Angela Shifflett, Trustee of the Irving R. Shifflett and

Angela D. Shifflett Asset Protection Trust dated September 6, 2016; and Kenneth B. Huso

(collectively, Taylor) challenged the Board of Supervisors of Greene County's (Board's) decision to

issue a special use permit (SUP) for Crimson Rock Capital, LLC (Crimson Rock) and Kenneth

Tatum to develop a tourist resort on parcel 37-A-67 in Greene County, Virginia (Property).  Taylor

appeals the circuit court's judgment sustaining Crimson Rock's and Tatum's special plea in bar and

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

demurrer.[1]  The Board moved to dismiss the appeal as moot.  After oral argument and consideration of the record, we dismiss the appeal as moot.

## BACKGROUND

Tatum owned nearly 85 acres of property in Greene County.  Tatum wanted to develop a project known as the Sojourner Glamping Resort Project,[2] consisting of up to 144 lodging structures, multiple pools, a spa, a restaurant, an event barn, a registration building, and an additional building for staff operations.  In 2021, Tatum's developers, Sojourner Glamping Company and Crimson Rock Capital, LLC, paid Mangum Economics, LLC, to complete an impact study to assess the economic, fiscal, construction, and operational impacts of the Project.

In 2022, Tatum applied to the Greene County Planning Department to rezone part of the Property from R-1 to A-1 and obtain a SUP for the Project.  The Property—tax map parcel 37-(A)-67—consisted of 84.94 acres, 40 of which had been zoned R-1.  Rezoning to A-1 was necessary to obtain a SUP because a tourist lodge is not allowed in the R-1 district, whereas A-1 districts permit tourist lodging.

Section 16-25 of Greene County's zoning ordinance permits tourist lodging in the A-1 and C-1 zoning districts.  The definition of a tourist lodging in Article 22 of the ordinance is:

> the provision of lodging within a single family dwelling and/or one or more structures that are accessory to the single family dwelling, with guest rooms (determined by right or by special use permit per Article 16-25), in which guest rooms are occupied for less than thirty (30) consecutive days, and which also may include rooms for dining and for meetings for use by tourist lodging guests, provided that the dining and meeting rooms are accessory to the tourist lodging use.  The owners may or may not reside in the dwelling. The tourist lodging definition would include the limited residential

---

[1] In August 2024, Sojourner Shenandoah, LLC (Sojourner) bought the Property previously owned by Kenneth Tatum, and Sojourner replaced Tatum as appellee by this Court's order.  (Oct. 29, 2024 order).

[2] The parties agree that "glamping" is outdoor camping with amenities and comforts such as beds, electricity, and access to indoor plumbing.

lodging uses also referred to as bed and breakfast lodging, lodges, country inns, hostels, and lodging houses as long as the use was in compliance with the applicable regulations under Article 16-25.

A SUP is required for: (i) more than five guest rooms; (ii) more than 4 events per year; or (iii) more than one dwelling or structure used for tourist lodging per parcel.

In 2022, staff with the Greene County Planning Department prepared a report (Staff Report), evaluating the Project's impact on traffic, water, sewer, school population, and emergency services. The Staff Report cited the definition of tourist lodging and affirmed that the Project would constitute tourist lodging. The Staff Report noted that Greene County's Planning Commission had voted (5-0) at a June 2022 public hearing to recommend approval of the rezoning and SUP for the Project.

Announcing the decision orally, through the Staff Report, and by meeting minutes of the public hearing on June 28, 2022, Greene County's zoning administrator—who was also the planning director—determined the Project fell within the ordinance's definition of tourist lodging. The meeting minutes from the public hearing indicated that the zoning administrator "explained the definition of tourist lodging and the uses that would be permitted" under the ordinance. The zoning administrator announced which of the proposed uses were "accessory uses" under the ordinance. After the zoning administrator determined that the Project satisfied the ordinance's definitions for tourist lodging with accessory uses, the Board voted to grant both the rezoning and the SUP on June 28, 2022.

Taylor did not appeal the zoning administrator's June 28, 2022 determinations to the Board or to the board of zoning appeals. Instead, Taylor filed a complaint and petition for appeal with the circuit court on July 28, 2022. Taylor contested the SUP on three grounds: (1) the Project failed to meet the definition of a tourist lodge under the ordinance; (2) the Project's components were not

"accessory uses"; and (3) the Board failed to obtain an independent impact analysis for the Project as required by § 16-11-2 of the ordinance. Taylor's complaint did *not* contest the rezoning.

Tatum and Crimson Rock filed a motion craving oyer, special plea in bar, and demurrer, and the Board supported the demurrer and special plea in bar.[3] They argued that the County provided a satisfactory independent impact analysis under ordinance § 16-1-1, and the County's zoning administrator properly interpreted the meaning of "accessory uses" and "tourist lodging" under the ordinance. They also argued that the zoning administrator, rather than the Board, decided that the Project qualified as tourist lodging with accessory uses, and Taylor had failed to exhaust administrative remedies under Code § 15.2-2311 and ordinance § 17-4 before proceeding to the circuit court.[4]

After granting oyer and considering the legislative record, the circuit court sustained the special plea in bar and demurrer. The circuit court found that the zoning administrator, not the Board, had decided that the proposed use fell within the ordinance's definitions of tourist lodging and accessory uses. The circuit court ruled that Taylor had failed to exhaust administrative remedies available and therefore could not proceed with a judicial attack. In addition, the circuit court held that the Staff Report was an independent impact study under the plain meaning of the ordinance because it provided an impact study separate and apart from the developer's impact study. Taylor appeals.

---

[3] The Board answered the complaint and then supported Crimson Rock's demurrer.

[4] Ordinance § 17-4 provides that an "appeal to the Board may be taken by any person aggrieved . . . by any decision of the Zoning Administrator. Such appeal shall be taken within thirty (30) days after the decision appealed from by filing with the Zoning Administrator, and with the Board, a notice of appeal specifying the ground thereof."

- 4 -

Responding to the appeal, the Board and Sojourner—who bought the Property from Tatum in 2024—ask the Court to take judicial notice of a second SUP covering the Property.[5] In October 2023, the Board passed Ordinance O-2023-0004, which granted a new SUP (second SUP) covering both the Property and another 70-acre parcel (37-(A)-66). The second SUP resulted from a separate legislative process and Board vote. And Greene County's Planning Department used the second SUP to approve the site development plan for the Project. Taylor does not contest the existence of the second SUP or lack of a timely appeal challenging it.

The Board moved this Court to dismiss the appeal as moot. The Board argued that the second SUP superseded the first, so the first SUP became invalid. Therefore, the requested relief can no longer be granted, and the matter should be dismissed as moot. We heard oral argument on August 12, 2025.

## ANALYSIS

An action that "involves a live controversy at its inception may become moot during the course of litigation." *Berry v. Bd. of Supervisors of Fairfax Cnty.*, 302 Va. 114, 129 (2023). Whenever it appears "that there is no actual controversy between the litigants, or that, if it once existed, it has ceased, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case." *Hamer v. Commonwealth*, 107 Va. 636, 637 (1907). Courts do not "decide questions upon which no rights depend, and when no relief can be afforded." *Id.* Rather, when "it appears from the record, or from matters of which courts may take judicial notice, that the controversy that once existed has terminated by lapse of time, the appellate court will dismiss" the appeal. *Hallmark Pers. Agency, Inc. v. Jones*, 207 Va. 968, 970 (1967) (quoting *Hankins v. Town of Va. Beach*, 182 Va. 642, 644 (1944)).

---

[5] Sojourner moved for an extension to file a late appellee brief, and we granted that motion by separate order.

*A second SUP allows the Project on the Property, rendering Taylor's appeal moot.*

An "appellate court may consider matters which have occurred since the entry of the judgment appealed from to determine whether it will proceed to review the record before it." *Josephson v. Commonwealth*, 303 Va. 414, 417 (2024). Indeed, "we are called upon with some frequency to determine whether a case has become moot while the appeal is pending." *Id.* at 417-18; *see also Godlove v. Rothstein*, 300 Va. 437 (2022) (case became moot when party sold property at issue). If fact-finding is required, it may be appropriate to remand to the circuit court. *Sheehy v. Williams*, 299 Va. 274, 283 (2020) (remanding for the circuit court to determine mootness). But when there is no factual dispute, an appellate court "can proceed to determine whether it should adjudicate the appeal in light of a development that occurred during the pendency of the appeal." *Josephson*, 303 Va. at 418.

Under Virginia Rule of Evidence 2:201, a "court may take judicial notice of a factual matter not subject to reasonable dispute in that it is either (1) common knowledge or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See also CPM Va., LLC v. MJM Golf, LLC*, 291 Va. 73, 85 (2015) (noting exception where judicial notice is appropriate). And an "appellate court may consider extrinsic evidence that is not already part of the record when considering whether a case has become moot during the pendency of an appeal." *Commonwealth v. Browne*, 303 Va. 90, 92 (2024).

Here, the Board argues that the challenge to the first SUP is moot because it granted a second SUP (SUP #23-001) that independently permits the Project on the Property. The Board reports that in May 2023, Crimson Rock applied for a second SUP, covering the Property (Tax Map 37-A-67) and an additional parcel (Tax Map 37-A-66), so the Project would be developed on 154.94 acres. The Board asserts that Taylor never appealed the second SUP, which permits the Project on the Property, so the appeal of the first SUP is moot.

In response, Taylor does not contest the existence of the second SUP but argues only that the Court "should not take up the Board's invitation to expand the record by taking judicial notice of the Second SUP." Taylor contends that if the SUP at issue here were overturned, then the second SUP "might arguably apply at most to the additional acreage, but not to the original portion." Taylor asserts that the second SUP does not supersede the first.

We find that there is no factual dispute over the existence and permanence of the second SUP because Taylor does not contest its existence or that they did not appeal the second SUP. Thus, we exercise our discretion to take judicial notice of the second SUP to determine mootness. *See Williams v. Commonwealth*, 63 Va. App. 458, 466 n.6 (2014) (noting that appellate courts have "discretionary power to take judicial notice"); Va. R. Evid. 2:201(b) (judicial notice may be taken "at any stage of the proceeding"); *CPM Va., LLC*, 291 Va. at 85 (noting exception where judicial notice is appropriate).

Although Taylor contends judicial notice is inappropriate, the cases Taylor cites are inapposite because they do not involve determining whether an appeal has become moot. *See, e.g.*, *Commonwealth v. Woodward*, 249 Va. 21, 23 (1995) (declining to take judicial notice of rules that were not relied on by the circuit court, but *not* involving a mootness analysis). Here, judicial notice is warranted so we can determine whether the case has become moot while the appeal was pending. *Browne*, 303 Va. at 92 (noting that appellate courts may consider extrinsic evidence in mootness analysis).

We next consider whether the second SUP for the Property renders the dispute over the first SUP moot. To begin, the approval of a SUP is a legislative action. *Bd. of Supervisors v. McDonald's Corp.*, 261 Va. 583, 590 (2001); *Lamar Co. v. City of Richmond*, 287 Va. 322, 326 (2014). The Board approved the second SUP through Ordinance O-2023-004, adopted on October

10, 2023. That zoning ordinance is a separate legislative ruling from the zoning ordinance for the SUP under review—O-2022-007.

The second SUP authorizes the Project on the Property and another parcel, totaling 154.94 acres, effectively reducing the density of the proposed tourist lodging by 45%. The second SUP independently formed the basis for the Greene County Planning Department's approval of the site development plan for the Project.[6] Thus, Crimson Rock could develop the Project on the Property irrespective of the existence or validity of the first SUP. Therefore, we find that the first SUP no longer controls the use and development of the Property, so the controversy over the first SUP has become moot.

## CONCLUSION

Finding the appeal is moot, we grant the motion to dismiss and dismiss the appeal.

*Dismissed.*

---

[6] We disagree with Taylor's position that the second SUP *only* expanded the first SUP to add additional acreage. The second SUP changed the nature of the first SUP by reducing density, and it arose from a separate legislative process.